UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHRISTOPHER SHAND,<br><br>   Plaintiff,<br> v.<br><br>CHAPDELAINE, HINES, GUADARRAMA, MUDANO, SALIUS, RIVERA, JOHN ALDI, MICHAUD, WHITE, AUBERT, BARD, CHYLINSKI, VANOSTRAND, BRYSGEL, DEJOINVILLE, ST. CLAIR, IRRIZARRY, SKRIBISKI, MAIORANA,<br><br>   Defendants. | CASE NO. 3:19-cv-755 (CSH)<br><br><br>MAY 30, 2019 |

## INITIAL REVIEW ORDER

**HAIGHT, Senior District Judge:**

*Pro se* plaintiff Christopher Shand, currently incarcerated at Northern Correctional Institution in Somers, Connecticut, has filed a complaint pursuant 42 U.S.C. § 1983. He names as defendants Warden Chapdelaine; Deputy Wardens Hines, Guadarrama, and Mudano; Captains Salius and Rivera; Counselor Supervisor John Aldi; Lieutenant White; Correctional Officers Michaud, Aubert, Bard, Chylinski, Vanostrand, Brysgel, DeJoinville, St. Clair, and Irrizary; and Unit Counselors Skribiski and Maiorana (the "Defendants"). Shand contends that Defendants have acted with deliberate indifference to his health and safety. As a result of the alleged violation, Shand seeks damages and declaratory relief from Defendants in their individual capacities.

### I. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review prisoner civil complaints against

governmental actors and dismiss any portion of the complaint that is "frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2). "[T]he district judge's § 1915A review of whether a complaint 'fails to state a claim upon which relief can be granted' is guided by the Federal Rules of Civil Procedure, as interpreted by [United States] Supreme Court and Second Circuit decisions whose principles have become familiar." *Green v. Martin*, 224 F. Supp. 3d 154, 160 (D. Conn. 2016). Although detailed allegations are not required, a complaint must "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This plausibility standard is not simply a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the Court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

*Pro se* submissions "are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)). *See also* Erickson v. Pardus, 551 U.S. 89, 94 (2007) ("A document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)). This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above: A *pro se* plaintiff's complaint still must "'state a claim to relief that is plausible on its face.'" *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted), and the Court may not "invent factual allegations" that the plaintiff has not pleaded. *Id.*

## II. FACTUAL ALLEGATIONS

The factual allegations contained in the Complaint are recounted below, recited in the light most favorable to the plaintiff.

On March 14, 2014, Shand was housed in the B2 Housing Unit at MacDougall-Walker Correctional Institution ("MacDougall-Walker"). Doc. 1 ("Compl.") ¶ 15. Security Risk Group ("SRG") inmates at MacDougall-Walker are assigned to the B1 and B2 Housing Units. *Id.* ¶¶ 16-17.

While in the B2 Housing Unit, Shand received numerous threats from other inmates. *Id.* ¶

3

18. Inmates told Shand that other inmates were "going to get him" and he received similar threats in written notes. *Id.* ¶¶ 19-20. Shand immediately reported all threats to Captains Salius and Rivera and told them he feared for his life. *Id.* ¶ 21. They ignored the threats. *Id.* ¶ 22.

On September 7, 2014, Shand was assaulted by his cellmate. He was escorted to the Restrictive Housing Unit ("RHU") and then transferred to the B1 Housing Unit. *Id.* ¶ 23. Shand received similar notes and verbal threats from the inmates in the B1 Housing Unit. *Id.* ¶ 24. He told Captain Rivera, the custody supervisor, the correctional officers assigned to the unit, the deputy wardens and the warden about the threats. *Id.* ¶ 25. He provided staff with the notes and the names of the inmates who were threatening him. *Id.* ¶ 26. No action was taken. *Id.* ¶ 27.

On January 5, 2015, Shand was transferred to Northern Correctional Institution ("Northern"). *Id.* ¶ 28. On April 13, 2016, Shand sent a letter to John Aldi regarding his safety concerns. *Id.* ¶ 29. The letter was followed by a legal call with John Aldi. *Id.* ¶ 30. Aldi dismissed Shand's concerns for his safety and refused to transfer him to a different housing unit. *Id.* ¶ 31. He did say that he would relay Shand's concerns to Captain Rivera. *Id.* ¶ 32.

On May 16, 2016, Shand was returned to MacDougall-Walker. *Id.*, ¶ 33. While in the Admitting and Processing Room, Shand told Officer Michaud and Lieutenant White that his life was in danger and he was concerned for his safety if he returned to the B1 or B2 Housing Units. *Id.* ¶ 34. They ignored his complaints. *Id.* ¶ 35.

Shand was escorted to the B1 Housing Unit. *Id.* Upon arrival, Shand told correctional staff that he felt suicidal. *Id.* ¶ 36. The officers called mental health staff and Shand was escorted to RHU. He was placed in a Ferguson gown under observation for several days. *Id.* ¶ 37. When he was cleared by mental health staff, Shand was returned to the B1 Housing Unit and placed in a

cell by himself. *Id.* ¶ 38.

On May 24, 2016, Shand learned that Captain Rivera had ordered him moved to a cell with a cellmate. *Id.* ¶ 39. Shand refused to move. *Id.* ¶ 40. Correctional Officer Aubert told Shand that if he did not move, he would receive a disciplinary report for refusing housing. *Id.* ¶ 41. En route to the new cell, Shand told Officer Aubert and his partner that he feared for his safety. *Id.* ¶ 42. He was ignored. *Id.* ¶ 43.

The following day, Shand told Unit Counselors Skribiski and Maiorana that he was in danger and asked them to stay in front of his cell. *Id.* ¶¶ 44-45. They told Shand to "Man up" and left the area. *Id.* ¶ 46. Correctional Officer Irrizary came to escort Shand to the shower. Shand told Officer Irrizary, and also Officers Bard, Chylinski, Vanostrand, Brysgel, DeJoinville, and St. Clair, that he did not feel safe in his cell or the housing unit and that "inmates were out to get him." *Id.* ¶¶ 47-48. The officers ignored him. *Id.* ¶ 49.

On May 25, 2016, Shand was assaulted in his cell by his cellmate, Henry Banks. *Id.* ¶ 50. Inmate Banks was issued a disciplinary report for assault. *Id.* ¶ 51. Shand suffered injuries to his back, ear, eyes and face. *Id.* ¶ 52.

### III. **DISCUSSION**

Shand contends that Defendants were deliberately indifferent to his safety because they failed to act on knowledge that he faced a substantial risk of harm. He asserts two claims, failure to protect and negligent failure to protect.

**A.  Statute of Limitations**

The limitations period for filing a section 1983 action in Connecticut is three years. *Thompson v. Rovella*, 734 F. App'x 787, 788-89 (2d Cir. 2018); *see also Lounsbury v. Jeffries*, 25

F.3d 131, 134 (2d Cir. 1994) (analyzing available state limitations periods and determining that appropriate limitations period for section 1983 actions filed in Connecticut is three years).

Shand signed the Complaint on May 15, 2019. Compl. at 10. It was scanned and emailed to the Court on May 17, 2019. *Id.* at 1. Prisoner complaints are considered filed on the day the prisoner gives the complaint to prison officials for mailing or, in this case, electronic filing. *See Dory v. Ryan*, 999 F.2d 679, 682 (2d Cir. 1993) (holding that a *pro se* prisoner complaint is deemed filed as of the date the prisoner gives the complaint to prison officials to be forwarded to the court), *opinion modified on reh'g on other grounds*, 25 F.3d 81 (2d Cir. 1994). Thus, any claims arising before May 15, 2016—the day Shand signed the Complaint, and the earliest date on which he could have given his Complaint to prison officials—are time-barred.

Shand alleges that he told Captain Salius about the threats against him between March and September of 2014. Compl. ¶ 21. He wrote to Warden Chapdelaine, and the deputy wardens, Hines, Guadarrama, and Mudano, about the threats after he was assaulted in September 2014. *Id.* ¶ 25. Shand wrote to SRG Coordinator Aldi on April 13, 2016 and had a conversation with him shortly thereafter. *Id.* ¶¶ 29-30. There are no allegations about any of these defendants after May 15, 2016. Thus, all claims against defendants Salius, Chapdelaine, Hines, Guadarrama, Mudano, and Aldi are time-barred. The claims against these six defendants are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**B.      Failure to Protect**

Shand alleges that Defendants were deliberately indifferent to his safety and failed to protect him from harm in violation of the Eighth Amendment. To state such a claim, Shand must "allege facts showing that he was incarcerated under conditions posing a substantial risk of serious

harm, and that the defendants acted with deliberate indifference to that risk and [his] safety." *Altayeb v. Chapdelaine*, No. 3:16-CV-00067 (CSH), 2016 WL 7331551, at *3 (D. Conn. Dec. 16, 2016) (internal quotation marks and citation omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference exists when prison officials know of and disregard an excessive risk to inmate safety. *See Farmer*, 511 U.S. at 834; *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference).

In assessing whether Shand faced an excessive risk of serious harm, this Court must "look at the 'facts and circumstances of which the official was aware at the time he acted or failed to act.'" *Hartry v. City of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (quoting *Heisler v. Kralik*, 981 F. Supp. 830, 836 (S.D.N.Y. 1997)). "While an actual physical attack is not required to demonstrate a substantial risk of serious harm, mere fear of an assault is insufficient to state a claim for an Eighth Amendment violation." *Smith v. Byrne*, Civil Action No. 2:14 CV 20, 2015 WL 347394, at *6 (D. Vt. Jan. 24, 2015) (citing cases). Thus, "a pleading which merely asserts an unsubstantiated fear of harm fails to plead a 'substantial risk of serious harm'" to support a failure to protect claim. *Douglas v. Annuci*, No. 14-CV-6018 CJS, 2017 WL 5159194, at *6 (W.D.N.Y. Nov. 7, 2017)[1]; *see also Fofana v. Suffolk Cty. Corr. Fac.*, No. 13-CV-443(SJF)(ETB), 2013 WL 2285733, at *5 (E.D.N.Y. May 20, 2013) (allegation that prisoner feared for his life without allegation of assault, injury, or threat by any other inmate, is insufficient to support

---

[1] In *Douglas*, however, the plaintiff alleged that there was an active gang contract on his life and he had been slashed by gang members on five previous occasions. 2017 WL 5159194, at *6. Thus, the court found that he adequately pled a failure to protect claim. *Id.*

reasonable inference that prisoner was housed under conditions posing a substantial risk of serious harm).

Shand alleges that he informed Captain Rivera of specific threats against him in 2014. Following an assault in September 2014, Shand was transferred to Northern. He does not allege, however, that he received any further threats after he returned to MacDougall in May 2016, or even that the inmates who had threatened him two years earlier were still confined there. Shand only alleges that he told Defendants Michaud, White, Aubert, Bard, Irrizary, Chylinski, Vanostrand, Brysgel, DeJoinville, and St. Clair, that he feared for his safety and his life was in danger. This allegation is insufficient to demonstrate that the Defendants would have understood that Shand was being housed under conditions that posed a substantial risk to his safety.

In its current form, the Complaint fails to allege a cognizable failure to protect claim. However, the Court will afford Shand an opportunity to file an Amended Complaint if he can allege facts demonstrating that any of Defendants Rivera, Michaud, White, Aubert, Bard, Irrizary, Chylinski, Vanostrand, Brysgel, DeJoinville, or St. Clair, was aware of a specific threat to his safety. For example, the Amended Complaint should include whether Shand expressed a specific concern as opposed to generalized concerns for his safety, whether any inmates who had threatened him in 2014 were still in the housing unit, and whether he received and communicated to any Defendant a new threat after his return to MacDougall in 2016.

**C.     Negligent Failure to Protect**

Shand re-asserts his failure to protect claim as a state law negligence claim, arguing that

Defendants had a duty of reasonable care to protect him and breached that duty.[2] Defendants, however, are protected by state statute against claims for negligence.

Connecticut General Statutes § 4-165 provides: "No state officer or employee shall be personally liable for damages or injury, not wanton or reckless or malicious, caused in the discharge of his duties or within the scope of his employment." All Defendants are employed by the Department of Correction, a state agency, and all the actions allegedly taken by the Defendants were within the scope of their employment. In addition, Shand has named the Defendants in their individual capacities only. As Defendants are protected from liability for damages by statute, the negligent failure to protect claim is dismissed as seeking "monetary relief from [defendants] who [are] immune from such relief." 28 U.S.C. § 19115A(b)(2); *see also Adorno v. Semple*, No. 3:16-CV-325 (MPS), 2016 WL 7469709, at *3 (D. Conn. Dec. 28, 2016) (dismissing negligence claims against prison officials in their individual capacities under Connecticut General Statutes § 4-165); *Ziemba v. Lajoie*, No. 3:11CV845 SRU, 2012 WL 4372245, at *5 (D. Conn. Sept. 24, 2012) (same); *Abrams v. Waters*, No. 3:17-CV-1659 (CSH), 2018 WL 691717, at *14 (D. Conn. Feb. 2, 2018) (same).

**D.    Request for Declaratory Relief**

Finally, Shand seeks a declaration that Defendants violated his constitutional rights when they failed to protect him from a known risk of assault. Declaratory relief operates prospectively. It is intended to enable parties to adjudicate claims before either party suffers significant damage.

---

[2] Negligence is not cognizable under section 1983. *See Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *see also Poe v. Leonard*, 282 F.3d 123, 145 (2d Cir. 2001) ("[M]ere negligence is insufficient as a matter of law to state a claim under section 1983").

*Orr v. Waterbury Police Dep't*, No. 3:17-cv-788(VAB), 2018 WL 780218, at *7 (D. Conn. Feb. 8, 2018) (citations omitted). In *Orr,* the court dismissed the request for declaratory relief because the relief related only to past actions; the plaintiff had not identified any legal issue that could be resolved by declaratory relief. *Id.*

Shand seeks declaratory relief related to the actions alleged in the complaint. The most recent incident occurred nearly three years ago. As he seeks declaratory relief relating to past actions, his request is not cognizable[3] and must be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**E.    Leave to Amend**

Where a pro se complaint fails to state a cause of action, the complaint generally "should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). However, if better pleading would not cure the deficiencies in plaintiff's claims, amendment would be "futile" and leave to amend is properly denied. *Grullon v. City of New Haven*, 720 F.3d 133, 139-40 (2d Cir. 2013) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, Shand's time-barred claims, state law claims, and claims for declaratory relief are substantively deficient. As such, repleading them would be futile. These claims are dismissed and Shand may not replead them.

---

[3] The Court notes that if Shand were to prevail on any of his claims, a judgment in his favor would serve the same purpose as a declaration that Defendants had violated his rights regarding that claim. Thus, any request for declaratory relief is redundant. *See U.S. v. $2,350,000.00 in Lieu of One Parcel of Property Located at 895 Lake Avenue Greenwich, Connecticut,* 718 F. Supp. 2d 215, 229 n.7 (D. Conn.  2010) (noting that if property is not forfeited, receiver-claimants would have been shown to be prevailing innocent owners and declaration to that effect would be redundant).

However, as noted, the Court will grant Shand leave to amend his § 1983 claims against Defendants Rivera, Michaud, White, Aubert, Bard, Chylinski, Vanostrand, Brysgel, DeJoinville, St. Clair, Irizarry, Skribiski, and Maiorana based on their failure to protect him from violence by his cellmate. Shand could reasonably assert such claims if he can cure the deficiencies noted in this Ruling.

## IV. CONCLUSION AND ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

(1) All claims against defendants Chapdelaine, Hines, Guadarrama, Mudano, Salius and Aldi, as well as the negligent failure to protect claim, and the request for declaratory relief are DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A(b)(1).

(2) Shand may file an Amended Complaint regarding his failure to protect claim against defendants Rivera, Michaud, White, Aubert, Bard, Chylinski, Vanostrand, Brysgel, DeJoinville, St. Clair, Irizarry, Skribiski, and Maiorana. As discussed above, the Amended Complaint shall include facts regarding what Shand told these defendants regarding his concerns for his safety. Shand shall file his Amended Complaint within thirty days from the date of this order. Failure to timely file the Amended Complaint will result in the dismissal of this case.

(3) Shand shall utilize the Prisoner Efiling Program when filing his Amended Complaint.

It is **SO ORDERED**.

Dated: May 30, 2019
New Haven, Connecticut

*/s/ Charles S. Haight, Jr.*
Charles S. Haight, Jr.
Senior United States District Judge