## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CHRISTOPHER SHAND,

               Plaintiff,

  v.

RIVERA, MICHAUD, WHITE, AUBERT,
BARD, CHYLINSKI, VANOSTRAND,
BRYSGEL, DEJOINVILLE, ST. CLAIR,
IRIZARRY, SKRIBISKI, MAIORANA,

         Defendants.

NO. 3:19-cv-755 (CSH)

OCTOBER 14, 2020

## INITIAL REVIEW ORDER

**HAIGHT, Senior District Judge:**

Plaintiff Christopher Shand, currently incarcerated at Cheshire Correctional Institution in Cheshire, Connecticut, has commenced this action *pro se* pursuant to 42 U.S.C. § 1983. On May 30, 2019, the Court issued an Initial Review Order [Doc. 6], dismissing some of Plaintiff's claims with prejudice[1] and granting Plaintiff leave to file an amended complaint restating his Section 1983 claims against Defendants Rivera, Michaud, White, Aubert, Bard, Chylinski, Vanostrand, Brysgel, DeJoinville, St. Clair, Irizarry, Skribiski, and Maiorana based on their failure to protect him from violence. Familiarity with the May 30, 2019 Order and the factual background recounted therein is assumed.

---

[1] The May 30, 2019 Order dismissed with prejudice all claims against defendants Chapdelaine, Hines, Guadarrama, Mudano, Salius and Aldi, as well as Plaintiff's negligence claims and request for declaratory relief.

1

Plaintiff has filed an amended complaint.  Doc. 26.  This Ruling examines whether Plaintiff's amended complaint sufficiently alleges a claim under Section 1983.

## STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, a district court must review prisoner civil complaints against governmental actors and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  *See* 28 U.S.C. § 1915A(b)(1), (2).

A complaint is adequately pled if its allegations, accepted as true and liberally construed, could "conceivably give rise to a viable claim."  *See Green v. Martin*, 224 F. Supp. 3d 154, 160 (D. Conn. 2016) (citing *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005)).  Although highly detailed allegations are not required, the complaint must state a claim that is "plausible on its face."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)); *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017).  A complaint states a claim that is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  However, the Court is not bound to accept "conclusory allegations."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d  98, 104 (2d Cir. 2011).  Nor does a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S at 557).

*Pro se* submissions "are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'"  *Matheson v. Deutshe Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*,

2

470 F.3d 471, 474 (2d Cir. 2006)); s*ee also Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008)

("a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than

formal pleadings drafted by lawyers").

This liberal approach, however, does not exempt *pro se* litigants from the minimal pleading

requirements described above: a *pro se* complaint must still "state a claim to relief that is plausible

on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at

678).

## FACTUAL ALLEGATIONS OF THE AMENDED COMPLAINT

The Amended Complaint alleges the following:

On May 16, 2016, Plaintiff Shand was transferred to MacDougall-Walker Correctional Institution

and taken to the Admitting and Processing ("A&P") Room. Doc. 26 (Am. Compl.)  ¶ 16. While in

the A&P Room, Shand told Defendants Officer Michaud and Lieutenant White that he did not feel safe

returning to the B-1 or B-2 housing units. *Id.* at ¶ 17. He told them that the Security Risk Group

("SRG") Bloods members "had put a hit out on his head" and would not stop until they got him. *Id.*

Shand also told the officers the aliases of persons who were continuously threatening him; he did not

know the actual names. *Id.* Despite this information, Shand was taken to the B-1 housing unit. *Id.*

at ¶ 18.

Upon arrival in the housing unit, Shand told the unit officers he felt suicidal. *Id.* at ¶ 19. The

officers called mental health staff and Shand was escorted to the restrictive housing unit ("RHU")

where he was provided a Ferguson gown and placed under observation for several days. *Id.* at ¶ 20.

In RHU, Shand told Defendant Captain Rivera that his life was in danger because the Bloods were

"out to get him." *Id.* When Shand asked Captain Rivera what could be done to ensure his safety and

asked to be placed in protective custody, Captain Rivera just walked away. *Id.* at ¶ 21.

When Shand was cleared by mental health staff, he was returned to the B1 Housing Unit and placed in a cell by himself. *Id.* at ¶ 22. Shand received threats and notes were slid under his cell door. *Id.* at ¶ 23. He wrote to Captain Rivera, Counselors Skribiski and Maiorana, unit officers, custody officers, and the warden and deputy warden daily, and spoke to them whenever they toured the housing unit. *Id.* at ¶ 23.

On May 24, 2016, Shand learned that Captain Rivera had ordered him moved to a cell with a cellmate. *Id.* at ¶ 24. Shand told Defendant Officer Aubert that he did not feel safe sharing a cell with inmate Banks because inmate Banks was one of the inmates who had been sliding notes under his door and threatening him. *Id.* Shand refused to move. *Id.* at ¶ 25. Officer Aubert told Shand that if he did not move, he would receive a disciplinary report for refusing housing. *Id.* at ¶ 26. En route to the new cell, Shand told Officer Aubert and his partner that he feared for his safety and asked to speak to Captain Rivera. *Id.* at ¶ 27. Plaintiff was ignored. *Id.* at ¶ 28.

The following day, Shand asked Defendants Counselors Skribiski and Maiorana why he was assigned a cell with inmate Banks when inmate Banks was one of the inmates threatening him. *Id.* at ¶ 29. Shand asked Defendants to stay close to his cell to prevent an assault or to move him to protective custody. *Id.* at ¶ 30. Defendants told Shand to "Man up" and left the area. *Id.* at ¶ 31. Defendant Correctional Officer Irizarry came to escort Shand to the shower. *Id.* at ¶ 32. On the way to and from the shower, Shand told Officer Irrizary that he did not feel safe in his cell and was going to be assaulted. *Id.* at ¶¶ 32-33. Shand also informed Defendants Officers Bard, Chylinski, Vanostrand, Brysgel, DeJoinville, and St. Clair. *Id.* at ¶ 33. The officers ignored him. *Id.* at ¶ 34.

On May 25, 2016, Shand was assaulted in his cell by his cellmate, Henry Banks. *Id.* at ¶ 35.

4

Inmate Banks was issued a disciplinary report for assault. *Id*. at ¶ 36. Shand suffered injuries to his back, ear, eyes and face. *Id*. at ¶ 37.

## DISCUSSION

Plaintiff alleges that Defendants were deliberately indifferent to his safety and failed to protect him from harm in violation of the Eighth Amendment. To state such a claim, Plaintiff must "allege facts showing that he was incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with deliberate indifference to that risk and [his] safety." *Altayeb v. Chapdelaine*, No. 3:16-CV-00067 (CSH), 2016 WL 7331551, at *3 (D. Conn. Dec. 16, 2016) (internal quotation marks and citation omitted); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Deliberate indifference exists when prison officials know of and disregard an excessive risk to inmate safety. *See Farmer*, 511 U.S. at 834; *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (stating that the charged official must be "actually aware of a substantial risk that serious inmate harm will result").

In assessing whether Plaintiff faced an excessive risk of serious harm, this Court must "look at the 'facts and circumstances of which the official was aware at the time he acted or failed to act.'" *Hartry v. City of Suffolk*, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (quoting *Heisler v. Kralik*, 981 F. Supp. 830, 836 (S.D.N.Y. 1997)). "While an actual physical attack is not required to demonstrate a substantial risk of serious harm, mere fear of an assault is insufficient to state a claim for an Eighth Amendment violation." *Smith v. Byrne*, Civil Action No. 2:14 CV 20, 2015 WL 347394, at *6 (D. Vt. Jan. 24, 2015) (citing cases). Thus, "a pleading which merely asserts an unsubstantiated fear of harm fails to plead a 'substantial risk of serious harm'" to support a failure to protect claim. *Douglas v. Annuci*, No. 14-CV-6018 CJS, 2017 WL 5159194, at *6 (W.D.N.Y. Nov. 7, 2017).

For example, in *Douglas*, the prisoner who alleged that there was an active gang contract on his life and that he had been slashed by gang members on five previous occasions sufficiently stated a failure to protect claim. 2017 WL 5159194, at *6.   By contrast, in *Fofana*, the prisoner's claims of fear for his life unaccompanied by any allegations of threat, assault, injury were insufficient to support a reasonable inference that prisoner was housed under conditions posing a substantial risk of serious harm. *Fofana v. Suffolk Cty. Corr. Fac.*, No. 13-CV-443(SJF)(ETB), 2013 WL 2285733, at *5 (E.D.N.Y. May 20, 2013).

In accordance with these principles, this Court's May 30, 2019 Initial Review Order stated that Plaintiff's amended complaint should allege facts demonstrating that Plaintiff expressed specific, rather than generalized, concerns regarding his safety to Defendants. *See* Doc. 6, at 8, 11.

The Amended complaint complies with this directive and cures the deficiencies of Plaintiff's original complaint.  Plaintiff alleges that he voiced specific concerns regarding his safety to Defendants who consciously disregarded Plaintiff's pleas.  For example, Plaintiff alleges that he informed Defendants Michaud, White and Rivera that he did not feel safe in the B-1 or B-2 housing units and that the SRG Bloods members "had put a hit out on his head" and would not stop until they got him.  Am. Compl. ¶ 17–18, 20–21.  Despite providing information regarding the persons that were threatening him, Plaintiff's concerns were ignored by Defendants.  *Id.*

Plaintiff also alleges that he informed Defendants Rivera, Skribiski, Maiorana, and other officers that notes containing threats were slid under his cell door.  *Id.* ¶ at 23.  Subsequently, Plaintiff was ordered to move to a cell with inmate Banks—one of the inmates who had been sliding notes under Plaintiff's door and threatening him.  *Id.* at ¶ 24–25, 29.  Despite informing Defendants of his concerns regarding inmate Banks, Defendant Aubert told Plaintiff that if he did not move, he

would receive a disciplinary report for refusing housing.  *Id.* at ¶ 26.  After moving to a new cell, Plaintiff, on various occasions, complained to Defendants Skribiski, Maiorana, Irizarry, Bard, Chylinski, Vanostrand, Brysgel, DeJoinville, and St. Clair that he did not feel safe in his cell and that he was going to be assaulted by his cellmate inmate Banks.  *Id.* at ¶¶ 29–34.  Despite these complaints, Plaintiff was, once again, ignored.  *Id.*  Shortly after, Plaintiff was assaulted in his cell by inmate Banks, suffering multiple injuries.  *Id.* at ¶ 35–37.

Construed liberally, these allegations are sufficient to support a reasonable inference that Defendants knew of and disregarded a substantial risk of serious harm to Plaintiff's safety.  Therefore, Plaintiff's amended complaint (Doc. 26) sufficiently states a failure to protect claim under Section 1983 against Defendants Rivera, Michaud, White, Aubert, Bard, Chylinski, Vanostrand, Brysgel, DeJoinville, St. Clair, Irizarry, Skribiski, and Maiorana.

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1)     The Clerk shall verify the current work addresses for defendants Rivera, Michaud, White, Aubert, Bard, Chylinski, Vanostrand, Brysgel, DeJoinville, St. Clair, Irizarry, Skribiski, and Maiorana with the Department of Correction Office of Legal Affairs, mail a waiver of service of process request packet to each defendant within twenty-one (21) days of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing.  If any Defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     The Clerk shall send Plaintiff a copy of this Order.

7

(3)    The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)    Defendants shall file their response, either an answer or motion to dismiss, within sixty (60) days from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above.  They also may include all additional defenses permitted by the Federal Rules.

(5)    Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order.  Discovery requests need not be filed with the court.

(6)    All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

(7)    Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)    If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9)    Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the

8

court.  Plaintiff is advised that the Program may be used only to file documents with the court.
Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R.
5(f).  Therefore, discovery requests must be served on defendants' counsel by regular mail.

(10)    The Clerk shall immediately enter the District of Connecticut Standing Order Re:
Initial Discovery Disclosures concerning cases initiated by self-represented inmates and shall send a
copy to Plaintiff.

It is **SO ORDERED**.

Dated:        October 14, 2020
              New Haven, Connecticut

                                        _/s/ Charles S. Haight, Jr._
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge

9